THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LI LIU, | CASE NO. C17-0640-JCC |
| Plaintiff, | ORDER |
| v. | |
| KEEGAN KELL, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion to dismiss and for discovery sanctions (Dkt. No. 44). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I. BACKGROUND

Plaintiff is a Chinese citizen and permanent U.S. resident. (Dkt. No. 35 at 1.) Defendant is a U.S. citizen. (Dkt. No. 35 at 1.) The two married in China in October 2013. (Dkt. No. 2 at 4.) Defendant then served as Plaintiff's immigration sponsor, signing a Form I-864EZ Affidavit of Support ("I-864 Affidavit") in April 2014. (*Id.*); (*see* Dkt. No. 27-7 at 6.) Under the terms of the I-864 Affidavit, Defendant is obligated to provide sufficient financial support to Plaintiff to ensure she receives income equal to at least "125 percent of the Federal poverty line." 8 U.S.C. § 1183a(a)(1)(A). This obligation began when Plaintiff became a lawful U.S. permanent resident
ORDER
C17-0640-JCC
PAGE - 1

and continues until Plaintiff: (1) becomes a U.S. citizen, (2) is credited with 40 quarters of coverage under the Social Security Act, (3) leaves the U.S. and terminates permanent resident status, (4) is the subject of a new affidavit of support, or (5) dies. 8 U.S.C. § 1183a(a)(2)–(3); 8 C.F.R. § 213a.2(e)(2)(i). Plaintiff obtained permanent resident status in the U.S. in May 2014. (Dkt. No. 2 at 5.)

The parties separated in August 2014. (Dkt. No. 23-1 at 3.) Defendant petitioned for dissolution of the marriage in September 2014, alleging Plaintiff "made living with her so unpleasant and untenable that [Defendant] left her and filed for divorce." (Dkt. No. 25 at 4); (*see* Dkt. No. 23-1 at 2). The divorce was finalized in November 2015, without an award of ongoing spousal maintenance. (Dkt. No. 23-8 at 2.) The divorce had no impact on Defendant's I-864 support obligation. (Dkt. No. 35 at 2.) At some point following the marital dissolution, Defendant stopped supporting Plaintiff. (Dkt. No. 2 at 5.) Plaintiff remarried in September 2017. (Dkt. No. 45-12 at 1.) Plaintiff did not notify Defendant of this change in marital status, which would have affected the amount of Defendant's I-864 support obligation due to Plaintiff's community property interest in her husband's earnings. *See Erler v. Erler*, 824 F.3d 1173, 1178 (9th Cir. 2016) (support obligation reduced by other sources of income). Defendant claims he only learned of the marriage through the efforts of a private investigator. (Dkt. No. 53 at 2.) Plaintiff confirmed the results of Defendant's investigation during a November 27, 2017 deposition. (Dkt. Nos. 45-17, 53 at 2.)

Plaintiff brought an action to enforce the I-864 support obligation on April 24, 2017 and moved to proceed *in forma pauperis*. (Dkt. Nos. 1, 2.) The Court granted Plaintiff's motion to proceed *in forma pauperis* shortly thereafter. (Dkt. No. 6). Defendant now moves to dismiss and for discovery sanctions, alleging that Plaintiff misstated her finances on her application to proceed *in forma pauperis* and that she improperly withheld evidence regarding those finances during discovery. (*See generally* Dkt. No. 44.) Defendant further alleges Plaintiff acted in bad faith. (*Id*. at 9.) Plaintiff counters that her application to proceed *in forma pauperis* was a "good

faith and accurate representation of her inability to pay the court filing fee" and that even if Plaintiff failed to make required disclosures during discovery, Defendant "demonstrates no prejudice" from this failure. (Dkt. No. 57 at 2, 8.)

## II. DISCUSSION

### A. Motion to Dismiss

#### 1. Legal Standard

The Court may waive the filing fee for a plaintiff who brings an action upon a showing that the plaintiff is "unable to pay." 28 U.S.C. § 1915(a)(1). For the Court to consider such a request, a plaintiff must submit "an affidavit that includes a statement of all assets" and other information demonstrating that "the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Once a court grants an application to proceed *in forma pauperis*, the case must be dismissed "any time" a court determines that an "allegation of poverty is untrue" and made in bad faith. 28 U.S.C. § 1915(e)(2)(A); *Escobedo*, 787 F.3d at 1232 n.8; *see also Finan v. Good Earth Tools, Inc.*, 565 F.3d 1076, 1080 (8th Cir. 2009) (dismissal pursuant to § 1915(e)(2)(A) is at the discretion of the court); *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 308 (7th Cir. 2001) (same); *Mathis v. New York Life Insurance Company*, 133 F.3d 546, 548 (7th Cir. 1998) (same).

#### 2. Plaintiff's Affidavit of Poverty Contains Bad-Faith Misrepresentations

Defendant's I-864 support obligation is reduced by the extent of other sources of income. *See Erler*, 824 F.3d at 1178 (9th Cir. 2016). Therefore, the amount and source of Plaintiff's income is a key issue in this case. Accordingly, Defendant received a variety of Plaintiff's financial records throughout discovery and deposed Plaintiff on various financial matters. (*See generally* Dkt. Nos. 45, 47, 48, 49, 50, 51, 63, 64.) Based on the information Defendant gathered, he concluded that Plaintiff misrepresented her income, assets, and living expenses to the Court when preparing her affidavit of poverty. (Dkt. No. 44 at 2.) On this basis, Defendant moves to dismiss. (*Id.*) The Court reviewed the briefing and exhibits relating to Defendant's motion to

dismiss and was unable to reconcile the amounts Plaintiff reported in her affidavit of poverty with the financial activity occurring in her monthly bank and credit card statements. The Court then sought additional briefing from Plaintiff to address this issue. (*See* Dkt. No. 65.) Based on the totality of evidence before it, the Court concludes that Plaintiff's affidavit of poverty contained bad-faith misrepresentations rather than mere inaccuracies.

Plaintiff's affidavit of poverty, prepared on April 22, 2017 and filed by counsel two days later, stated that Plaintiff had: no cash no hand; a checking account balance of $900; $23,000 in in a brokerage account that was "on loan from [her] parents" that she was obligated to return "once [she] become[s] more financially stable;" income over the last twelve months under $10,000, with the majority being gifts; and monthly living expenses just over $1,000 per month. (Dkt. Nos. 1 at 1–2, 58 at ¶ 6.) The Court cannot reconcile these amounts with Plaintiff's financial records and her deposition testimony, which indicate significantly higher income and assets and significantly lower living expenses.

For example, Plaintiff claimed on her affidavit of poverty that she received $6,000 in gifts during the twelve month period ending on April 22, 2017. (Dkt. No. 1 at 2.) Yet Plaintiff made ATM deposits during this period of $26,401. (Dkt. No. 65 at 3–4.) Plaintiff claims that of this amount only $6,181.09 were gifts. (Dkt. No. 67 at 5.) She claims $6,220 of ATM deposits represented a loan from her parents and that she "used only a small amount." (Dkt. No. 67 at 3.) But according to Plaintiff's affidavit of poverty, she had no cash on hand and an $800 checking account balance on April 22, 2017 (Dkt. No. 1 at 2). Plaintiff does not account for where this "loaned" cash went if she did not spend it and it was not in her bank account. Plaintiff further claims that $6,169 of the ATM deposits represent reimbursements from her now husband, Adam Higley, for items that he purchased using her credit card in order to improve her credit score. (Dkt. No. 67 at 5–6.) Plaintiff admits she "did benefit from and use some of these items" but "did not think this is a money gift." (Dkt. No. 67 at 4.) Examples of items purchased on her credit card and then reimbursed by Mr. Higley, which Plaintiff did not report as gifts, include a "dress

for me to wear to my best friend's wedding," frequent meals, groceries, and other retail purchases. (Dkt. No. 67 at 4); (*see* Dkt. Nos. 64-4 at 2–4; 67-1–67-7). Further, the meals, groceries, and purchases on Plaintiff's credit card are in addition to similar purchases Mr. Higley made on his own credit card. (*See* Dkt. Nos. 64-2 at 3–6). Many of the purchases Mr. Higley made on Plaintiff's behalf appear to be gifts, yet Plaintiff reported none. Further, Plaintiff's affidavit of poverty does not reflect payments Mr. Higley made on Plaintiff's behalf on a vehicle she later admits he leased and insured for her, or $800 in monthly gifts Mr. Higley admits he made to her during a portion of the period at issue. (*See* Dkt. Nos. 63-2 at 1, 64-3 at 3.) Finally, Plaintiff claims the remaining amount of unaccounted-for ATM deposits—approximately $3,400—represented cash gifts she received before April 2016, which she periodically deposited during the twelve-month period at issue. (Dkt. No. 67 at 5.) The Court finds this contention implausible, in light of the fact that Plaintiff claimed she had no cash on hand at the time she filed her affidavit of poverty. Therefore, based on the evidence presented, it appears Plaintiff significantly understated income from gifts on her affidavit of poverty.

In addition, Plaintiff claims that "the majority" of the $23,000 she reported on her affidavit of poverty as being held in a brokerage account and representing a loan from her parents was properly excluded as gift income because it was, in fact, a loan from her parents that she did not spend. (Dkt. Nos. 57 at 5, 58 at ¶ 4.) Again, the Court is skeptical. First, Plaintiff transferred these funds so frequently between her brokerage, savings, and checking accounts during the twelve months preceding her affidavit of poverty that the total amount of deposits into her accounts relating to these funds, by her own admission, was $123,389. (Dkt. No. 67 at 9.) She asserts this was to "maximize the interest that I could earn." (*Id.*) But she did not report this interest on her affidavit of poverty (*See generally* Dkt. No. 1.) Also, such active management implies a level of exercise and control not consistent with Plaintiff's allegation that this was merely a loan she was holding with the intention of returning. Second, Plaintiff provides no documentation to support her allegation that she repaid her parents in May 2017. (Dkt. No. 58 at

¶ 9.) Third, the balance of the loan from her parents keeps changing. Plaintiff indicated in an interrogatory, for example, that only $15,400 in her brokerage account related to a loan from her parents, with $6,000 coming from friends, and the remainder coming from her own earnings. (Dkt. No. 63-1 at 4.) At a minimum, by Plaintiff's own admission, some portion of the amount held in her brokerage account at the time Plaintiff moved to proceed *in forma pauperis* was not a loan. What that amount is, the Court cannot say with any degree of certainty, as Plaintiff's answers continue to evolve on this issue. Regardless, Plaintiff clearly overstated what portion of the account represented loaned funds, and this overstatement is a misstatement of her ability to "afford the necessities of life." *Escobedo*, 787 F.3d at 1234.

Nor can the Court reconcile the living expenses Plaintiff claimed on her affidavit of poverty with information now before the Court. Plaintiff claimed her monthly living expenses were $270 for transportation, $250 for food, $500 for rent, and $50 for her phone. (Dkt. No. 1 at 1.) Yet, by her own admission, she was living rent-free with Mr. Higley at the time, he leased a vehicle for her and made the lease and insurance payments, and he paid the majority of items on her credit card bill, which, based on the Court's review, include substantial food charges and her monthly T-Mobile phone bill. (*See* Dkt. Nos. 45-8 at 2; 63-1 at 2; 64-3 at 3; 64-4 at 2–4; 67-1– 67-7.) Therefore, the Court concludes that Plaintiff significantly overstated her monthly living expenses on her affidavit of poverty.

To dismiss a complaint pursuant to 28 U.S.C. § 1915(e)(2)(A), the Court must conclude that Plaintiff's misrepresentations were the product of bad faith, rather than mere inaccuracy. *See Escobedo*, 787 F.3d at 1232 n.8. The totality of the evidence supports a finding of bad faith. First, the sheer size of the misrepresentations, as described above, suggest bad faith. *See Mathis v. New York Life Ins. Co.*, Case No. C95-2770, slip op. (N.D. Ill. Aug. 16, 1996), *aff'd*, 133 F.3d 546 (7th Cir. 1998) (failure to disclose $7,500 in home equity sufficient for a bad-faith determination even through affiant "barely can live and avoid foreclosure on [the] home."). Second, the purchases made using Plaintiff's and her then-fiance's credit cards in and around the

date Plaintiff moved to proceed *in forma pauperis* are not consistent with someone who "cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d at 1234. Those purchases include $1,000 in jewelry on the day she filed her application and $411.92 at Macy's the following week. (Dkt. Nos. 64-2 at 21, 67-6 at 3.) Third, Plaintiff had significant professional accounting experience and was studying to become a certified public accountant at the time she prepared her affidavit of support, and counsel filed Plaintiff's affidavit on her behalf—undermining any claim that misstatements were no more than innocent mistakes. (Dkt. Nos. 27-1 at 3, 27-2 at 3, 27-4 at 2, 58 at ¶ 6.) Fourth, Plaintiff repeatedly alleged in her supplemental briefing to the Court that many of the deposits into her bank account represented cash received prior to the twelve-month period preceding preparation of her affidavit of poverty, yet she claimed to have no cash on hand in her affidavit. (*Compare* Dkt. No. 67, *with* Dkt. No. 1.)

Based on the totality of the evidence presented, the Court concludes that Plaintiff's misstatements on her affidavit of poverty were intentional and were the product of bad faith. On this basis, dismissal is warranted. Further, for dismissal to be an effective sanction, it must be with prejudice. *See Kennedy v. Huibregtse*, 831 F.3d 441, 444 (7th Cir. 2016) (dismissal without prejudice "would seem little punishment at all"); *see also Thomas*, 288 F.3d at 306 (committing the issue to the discretion of the dismissing court).

Accordingly, the Court GRANTS Defendant's motion to dismiss with prejudice.

### B. Motion for Discovery Sanctions

Defendant also moves for attorney fees, alleging that such an award is warranted based on the following discovery violations: Plaintiff failed to disclose in her July 2017 initial disclosures that her fiance, Mr. Higley, was a person with discoverable information; Plaintiff indicated in her first set of interrogatories, filed five days before her September 10, 2017 marriage ceremony to Mr. Higley and months after she and Mr. Higley had obtained a marriage license, that she did not anticipate any changes in her income for the next two years; and Plaintiff

failed to update her disclosures following her re-marriage until Defendant specifically asked about the marriage in Plaintiff's November 27, 2017 deposition. (Dkt. Nos. 45-12 at 1, 45-20 at 2, 45-21 at 2, 53 at 2.)

1. <u>Legal Standard</u>

A party must provide contact information for individuals likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(i). If a party has made initial disclosures under Rule 26, then the party must supplement or correct the disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties." Fed. R. Civ. P. 26(e)(1)(A). Similarly, a party must "fully" respond to interrogatories "under oath," i.e., truthfully. Fed. R. Civ. P. 33(b)(3).

Where a party fails to meet its discovery obligations, the Court may order "payment of reasonable expenses, including attorney's fees, caused by the failure" or "impose other appropriate sanctions" such as dismissal, unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1)(A)–(C). The party "facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012). To determine whether a party has met its burden showing harmlessness, the Court will consider the following factors: (1) whether there is any prejudice or surprise to the party against who the evidence is offered; (2) whether the prejudice could be cured; (3) the likelihood of disrupting the trial; and (4) any evidence of bad faith. *Mercer Pub., Inc. v. Smart Cookie Ink, LLC*, Case No. C12-0188-JLR, slip op. at 3 (W.D. Wash. July 25, 2012) (*citing David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir.2003). The Ninth Circuit has given district courts broad discretion to issue sanctions. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). But "the court can shift only those attorney's fees incurred because of the misconduct at issue." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).

2. <u>Duty to Disclose Relationship with Mr. Higley</u>

Plaintiff does not dispute that she had an obligation to disclose her relationship with Mr. Higley. (*See generally* Dkt. No. 57.) At issue is whether Plaintiff's failure to timely disclose her re-marriage was the result of Plaintiff's bad faith and whether it was prejudicial to Defendant. *See David*, 324 F.3d at 857.

As to the issue of bad faith, Plaintiff made certain disclosures regarding Mr. Higley before being prompted by Defendant in her November 27, 2017 deposition. For example, in Plaintiff's September 5, 2017 responses to Defendant's first set of interrogatories, Plaintiff indicated that Mr. Higley, began providing financial support in October 2015 and co-signed a car lease in 2017. (Dkt. Nos. 45-21 at 1, 59-1 at 1.) While this falls well short of full and timely disclosure, the information Plaintiff provided was sufficient to put Defendant on notice that further investigation was needed. Further, the Ninth Circuit's examples of bad behavior are far worse than Plaintiff's behavior in this action. They include willful destruction of evidence, use of fraudulent evidence to obtain a favorable verdict, and counsel's reckless, repeated introduction of prohibited testimony during trial. *R&R Sails, Inc.*, 673 F.3d at 1247. Accordingly, the Court finds bad faith has not been clearly demonstrated in this instance.

As to the issue of prejudice, Defendant argues that had he known of the marriage, he would have incurred but a small portion of the attorney fees here. (Dkt. No. 44 at 8.) This is because Defendant would have been willing to negotiate a settlement with the knowledge that his future I-864 support obligation would have been effectively limited by Plaintiff's community property interest in her new husband's wages. (Dkt. No. 61 at 9); (*see* Dkt. No. 63-3 at 1) (October 2017 e-mail from Plaintiff's counsel reminding Defendant of a potential lifetime support obligation).[1] This argument is speculative and self-serving. The Court has no way to know what settlement Defendant may have entertained. Furthermore, Defendant deposed

---

[1] The Court considers this document for purposes other than proving the validity of an amount or for impeachment. Fed. R. Evid. 408.

Plaintiff on November 27, 2017 and was able to obtain the information necessary to gauge the financial impact of Plaintiff's marriage to Mr. Higley. (*See generally* Dkt. Nos. 45-1, 45-3–45-5, 45-7–45-10, 45-13, 45-14, 45-16, 45-17, 45-19.) From this point forward, Defendant had full information to negotiate for settlement. Instead, he chose to make the instant motion, incurring yet additional attorney fees. (*See generally* Dkt. Nos. 44–55, 60–64.) Accordingly, the Court finds prejudice is lacking.

Neither bad faith nor prejudice has been adequately demonstrated. On this basis, the Court DENIES Defendant's motion seeking attorney fees.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and for discovery sanctions (Dkt. No. 44) is GRANTED in part and DENIED in part. The case is dismissed with prejudice but without an award of attorney fees.

DATED this 19th day of March 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE